**ORIGINAL**

J. Nicholas Murdock (Bar No. 5-1369)
Timothy Pearse (Bar No. 7-5026)
Murdock Law Firm, PC
123 W. First Street Ste. 675
Casper, Wyoming 82601
(307) 460-7090
(877) 216-5037 (Fax)
&
Bob Mullen (Bar No. 5-1464)
PO Box 2905
Casper, WY 82602
(307) 234-1975
(307) 235-6085(Fax)

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2013 SEP 5 PM 2 04

STEPHAN HARRIS, CLERK
CHEYENNE

### IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| FREDERICK M. LOLLAR, individually and as wrongful death representative of Jacqueline M. Lollar, suing on behalf of himself as wrongful death beneficiary, JAMES R. LOLLAR, wrongful death beneficiary, R. L. L., wrongful death beneficiary, and R. J. L., wrongful death beneficiary, <br><br> *Plaintiffs,* <br><br> vs. <br><br> WAL-MART STORES, INC., a foreign corporation; and JOHN DOE WAL-MART ENTITIES, <br><br> *Defendants.* | Civil No. 13-CV-196-J |

### COMPLAINT

Wrongful Death Representative Frederick M. Lollar, by and through his undersigned

1

attorneys, and for his complaint against Wal-Mart Stores, Inc. ("Wal-Mart Stores"), and John Doe Wal-Mart Entities (hereinafter collectively referred to as "Defendants") hereby states and alleges as follows:

## I. **PARTIES TO THE ACTION**.

1. Frederick M. Lollar ("Frederick Lollar") is Jacqueline M. Lollar's ("Jacqueline Lollar's") surviving husband. Frederick Lollar is a Wyoming resident, and was appointed Wrongful Death Representative of Jacqueline Lollar on March 5, 2013 by order of the District Court of the First Judicial Court within and for Laramie County Wyoming, in Civil Action No. 180-420.

2. Wal-Mart Stores is a Delaware corporation registered to do business in the State of Wyoming. The principal place of business for Wal-Mart Stores is Bentonville, Arkansas. Upon information and belief, Wal-Mart Stores was the owner and operator of the store located at 1695 Coffeen Avenue, Sheridan, Wyoming.

3. Wal-Mart Supercenter is a registered trade name of Wal-Mart Stores and was used by Wal-Mart Stores at its store located at 1695 Coffeen Avenue, Sheridan, Wyoming ("Sheridan Wal-Mart Supercenter")

4. John Doe Wal-Mart Entities include any Wal-Mart Stores-related entity operating at, or from the location of the Sheridan Wal-Mart Supercenter that are not named above.

## II. **WRONGFUL DEATH BENEFICIARIES OTHER THAN FREDERICK LOLLAR**

5. James R. Lollar ("James Lollar") is the surviving adult son of Jacqueline Lollar. James Lollar is a Wyoming resident.

6. R.L.L. is the surviving minor granddaughter of Jacqueline Lollar. R.L.L. is a Wyoming resident.

7. R.J.L. is the surviving minor grandson of Jacqueline Lollar. R.J.L. is a Wyoming Resident.

### III. JURISDICTION AND VENUE.

8. Plaintiff and Defendants are citizens of different states.

9. The Amount in controversy in this matter exceeds seventy five thousand dollars ($75,000.00).

10. Given the foregoing, Jurisdiction and Venue is proper in this Court pursuant to 28 USC § 1332(a).

### IV. FACTS COMMON TO ALL CLAIMS.

11. Plaintiff restates and re-alleges the allegations contained in the paragraphs 1 through 10 as though stated for the first time in this *Complaint*.

12. On or about September 1st, 2011, Frederick Lollar purchased cantaloupe from the Sheridan Wal-Mart Supercenter (the "Adulterated Cantaloupe"). The Adulterated Cantaloupe bore or contained Listeria monocytogenes when purchased.

13. Defendant Wal-Mart Stores utilizes the Wal-Mart Supercenter trademark and its own advertising to inform Wyoming consumers of what the Wyoming citizen can expect in food products if he or she shops and purchases produce at Wal-Mart stores. Wal-Mart represents that its "commitment" to its "customers is unparalleled." Because of its "commitment," Wal-Mart represents to Wyoming consumers that only "safe, quality foods" will be sold at its Wyoming stores. Indeed, Wal-Mart represents to the Wyoming public that its unparalleled commitment to safe and quality foods is evidenced by its "harmonized, leading-edge food safety standards."

14. Frederick Lollar and his wife, Jacqueline Lollar, took Wal-Mart Stores at its word. For most of the ten years before Jacqueline's death due to consumption of contaminated cantaloupe purchased at the Sheridan Wal-Mart store, the family shopped and purchased its food almost entirely at the Sheridan Wal-Mart store, believing it was "safe, quality" food.

15. Listeria monocytogenes is a form of bacteria that can cause a fatal infection known as Listeriosis to persons whose immunity system is combatting other conditions.

16. Cantaloupe bearing or containing Listeria monocytogenes should not be sold to a Wyoming citizen purchasing food.

17. Wal-Mart Stores was aware that some of its customers who bought at Wal-Mart Stores expecting "safe, quality" foods might have compromised immunity systems, including those purchasing at the Sheridan Wal-Mart store.

18. Cantaloupe transmitting Listeria monocytogenes is adulterated food.

19. Cantaloupe transmitting Listeria monocytogenes is not a safe food.

20. Cantaloupe transmitting Listeria monocytogenes is not a quality food.

21. Symptoms from Listeriosis can take as little as three days to manifest after a person consumes food contaminated with Listeria monocytogenes. But the symptoms may not manifest themselves for several weeks.

22. Frederick Lollar consumed approximately one quarter of the Adulterated Cantaloupe on the day it was purchased, while Jacqueline Lollar consumed the balance, approximately three quarters of the Adulterated Cantaloupe, over the course of that day and the next.

23. On September 12, 2011, the Center for Disease Control and Prevention ("CDC") announced its ongoing investigation of a multi-state outbreak of Listeriosis ("Listeria Outbreak") found to be brought on by consumption of cantaloupes.

24. On September 14, 2011, the Food and Drug Administration (FDA) issued a press release announcing a recall of cantaloupes because such cantaloupes had the potential to be contaminated with Listeria monocytogenes linked to the Listeria Outbreak.

25. Prior to the FDA announcement, the Sheridan Wal-Mart Supercenter pulled cantaloupes from its shelves claiming it had independently determined the cantaloupes might be contaminated with Listeria monocytogenes and should not be sold to consumers.

26. Prior to September 18, 2011 and after the Wal-Mart Supercenter took cantaloupes from its shelves, Frederick Lollar returned to the Sheridan Wal-Mart Supercenter to purchase groceries, including cantaloupe.

27. No signs were in the produce section indicating Wal-Mart Stores determined cantaloupes needed to be removed or its customers who previously bought cantaloupe may have been exposed to Listeria monocytogenes.

28. Wal-Mart's unparalleled commitment to its customers and those customers' safety requires at a minimum such disclosures be made as set forth in paragraph 27.

29. Frederick Lollar, having no knowledge of the Listeria Outbreak, asked a Sheridan Wal-Mart Supercenter employee if there were any cantaloupes that he could buy.

30. The employee, who knew or should have known that the cantaloupes had been taken off the shelves because of suspected contamination, did not inform Frederick Lollar that Wal-Mart Stores removed the cantaloupes so that they would not be sold.

31. The employee did not inform Frederick Lollar of Wal-Mart Stores' reasons for removing the cantaloupes.

32. The employee did not inform Frederick Lollar that Wal-Mart Stores was concerned its customers may have been exposed to Listeria monocytogenes.

33. Instead, the employee merely said no cantaloupe was available but some should be coming in and would be stocked for sale.

34. The employee implied nothing should be taken from the absence of cantaloupe in the store.

35. The employee said nothing about Wal-Mart Stores pulling the cantaloupes due to safety concerns. The employee did not warn Frederick Lollar about Wal-Mart's concern that Wyoming customers who ate cantaloupe, such as Frederick and Jacqueline Lollar, might be exposed to Listeria monocytogenes.

36. No written warnings in the produce area announced to Sheridan Wal-Mart Supercenter's customers that cantaloupe were removed or the reasons for the removal of the cantaloupe.

37. Upon information and belief, Wal-Mart Stores did not permit its employees to warn customers that the cantaloupes were pulled due to safety concerns or that customers consuming cantaloupes might be infected with Listeria monocytogenes.

38. Frederick Lollar, though specifically asking about purchasing cantaloupe and being in the part of the store from which the cantaloupe had been removed because of Wal-Mart's fear it could infect customers with Listeria monocytogenes, left the Sheridan Wal-Mart Supercenter knowing nothing of Wal-Mart's determination that cantaloupes sold at the Sheridan Wal-Mart Supercenter could bear or carry Listeria monocytogenes or that its customers might have been exposed to the potentially deadly bacteria.

39. On or about September 15, 2011 both Frederick Lollar and Jacqueline Lollar became ill as a result of their consumption of the Adulterated Cantaloupe purchased on or about September 1, 2011.

40. Initially, Frederick and Jacqueline Lollar's symptoms were not unlike those of the stomach flu, and aside from discomfort were no cause for serious concern. However, Jacqueline Lollar's illness worsened.

41. While Jacqueline Lollar was generally sick on the evening of September 17th, 2011, on the morning of September 18th, 2011 Jacqueline Lollar's illness came to a head. That morning, after getting up, Jacqueline fell back on the bed, was unable to get up, and was incoherent. Frederick Lollar came upon Jacqueline Lollar shortly after she fell back on the bed. At that time, she could not help herself up, and was speaking incoherently. Frederick Lollar, distressed by his wife's seriously deteriorated condition, decided to take her to the emergency room at the Sheridan Memorial Hospital.

42. After helping Jacqueline Lollar up from her fall, Frederick Lollar picked Jacqueline Lollar up and carried her to his truck. He then took her to the Sheridan Memorial Hospital where she was admitted.

43. Jacqueline Lollar died on September 19th, 2011 as a result of eating the Adulterated Cantaloupe and contracting. Listeria monocytogenes.

44. After her death, tests done on Jacqueline Lollar's blood revealed her blood contained Listeria monocytogenes, which, according to Pulsed Field Gel Electrophoresis (PFGE) testing, had a DNA fingerprint that matched one of several outbreak strains of Listeria monocytogenes connected with the Listeria Outbreak.

## VI. <u>WRONGFUL DEATH BENEFICIARIES CLAIMS FOR WRONGFUL DEATH</u>.

45. Plaintiff restates and re-alleges the allegations contained in paragraphs 1 through 44 as though stated for the first time in this *Complaint*.

46. Wrongful Death Beneficiaries, including Frederick Lollar, James Lollar, R.L.L. and R.J.L., have suffered damages resulting from the wrongful death of Jacqueline Lollar, which include, among other things, the loss of probable future support, companionship, society and comfort. ("Beneficiary Damages")

47. Defendants are liable for Beneficiary Damages.

## VII. <u>WRONGFUL DEATH BENEFICIARIES' CLAIM: SALE OF ADULTERATED FOOD.</u>

48. Plaintiff restates and re-alleges the allegations contained in paragraphs 1 through 47 as though stated for the first time in this *Complaint*.

49. Pursuant to Wyoming Statute § 35-7-111 and otherwise, Defendants had a duty to ensure that produce sold at the Wal-Mart Supercenter was unadulterated and safe for human consumption. The duty imposed under Wyoming law is a non-delegable duty.

50. Defendants breached that duty.

51. Defendant's breach proximately caused Jacqueline Lollar's consumption of Listeria monocytogenes borne or contained on the Adulterated Cantaloupe and ultimately her death from that bacterial infection.

52. The Wrongful Death Beneficiaries suffered damages as a result of the death of Jacqueline Lollar.

## VIII. **FREDERICK LOLLAR'S INDIVIDUAL CLAIM INCLUDING EMOTIONAL DISTRESS**

53. Plaintiff restates and re-alleges the allegations contained in the paragraphs 1 through 52 as though stated for the first time in this *Complaint*.

54. Defendants proximately caused Frederick Lollar to contract Listeriosis as a result of eating portions of the Adulterated Cantaloupe.

55. Frederick Lollar suffered damages, including pain and suffering and emotional distress as a result of eating portions of the Adulterated Cantaloupe.

## IX. **DAMAGES**.

56. The damages sustained by Wrongful Death Beneficiaries and Frederick Lollar exceed the jurisdictional requirements of this Court and the Plaintiff prays for the following relief:

    a. Frederick Lollar requests damages, on behalf of the wrongful death beneficiaries including himself, resulting from the death of Jacqueline Lollar which include damages for the loss of probable future support, companionship, society and comfort of Jacqueline Lollar;

    b. Frederick Lollar individually requests damages for his physical injury, pain, suffering, and mental anguish and distress.

    c. Other just and further relief that the Court deems just and proper.

WHEREFORE, Plaintiffs request an award of damages as outlined above and for such other and further relief, as the Court may deem equitable and just under the circumstances.

DATED this 5th day of September 2013.

          FREDERICK M. LOLLAR, individually and as wrongful death representative of Jacqueline M. Lollar, suing on behalf of himself as wrongful death beneficiary, JAMES R. LOLLAR, wrongful death beneficiary, R.L.L., wrongful death beneficiary, and R.J.L., wrongful death beneficiary
*Plaintiffs*,

By: _____/s/ J. N. Murdock_____
        J. Nicholas Murdock
        Bar No. 5-1369
        Timothy Pearse
        Bar No. 7-5026
        Murdock Law Firm, PC
        123 W. First Street Ste. 675
        Casper, Wyoming 82601
        (307) 460-7090
        (877) 216-5037 (Fax)


        Bob Mullen
        Bar No. 5-1464
        PO Box 2905
        Casper, WY 82602
        (307) 234-1975